**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **GREGORY E. H.**,[1] | Case No. 6:20-cv-01559-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Laurie B. Mapes, Attorney at Law, P.O. Box 1241, Scappoose, OR 97056; Luke Moen-Johnson, Drew L. Johnson, P.C., 1700 Valley River Drive, Suite 100, Eugene, OR 97401. Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, United States Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Franco L. Becia, Special Assistant United States Attorney, Office of General Counsel, Social Security Administration, 701 5th Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075.

**IMMERGUT, District Judge.**

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of the

Social Security Administration's ("Commissioner") final decision denying his application for

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Title XVI Supplemental Security Income ("SSI"). For the reasons stated below, this Court finds

that the Administrative Law Judge ("ALJ") committed harmful error in formulating the residual

function capacity ("RFC") without a concentration, persistence, or pace limitation and in

rephrasing the type of supervision which Plaintiff can accept from "normative" to "typical." In

all other aspects Plaintiff has challenged, the ALJ either did not err or the error was harmless.

The ALJ's decision is REVERSED and REMANDED for the limited purpose of reframing the

RFC and asking appropriate hypothetical questions of the vocational expert ("VE") regarding

Plaintiff's concentration, persistence, or pace limitation and the type of supervision to which

Plaintiff is amenable.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (internal quotation marks omitted) (quoting

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks

omitted) (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this Court may not substitute its judgment

for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

PAGE 2 – OPINION AND ORDER

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born in 1985. AR 71, 134. He has no past relevant work. AR 23, 83. Plaintiff filed an application for SSI on May 13, 2019, alleging disability since May 14, 2001; Plaintiff amended the alleged onset date to May 13, 2019. AR 15, 32–33, 36. He was 33 years old on the alleged onset date.

Plaintiff's application was denied initially and upon reconsideration. AR 56–69; 71–84. Plaintiff requested a hearing. AR 94. Plaintiff appeared with counsel at an administrative hearing on April 20, 2020, before ALJ Moira Ausems. AR 32.

On May 6, 2020, the ALJ issued a decision finding that Plaintiff had not been under a disability since May 13, 2019, the date the application was filed. AR 15–24. On May 12, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 4, 131–33. On July 9, 2020 the Appeals Council denied the request for review making the ALJ's decision the Commissioner's final administrative decision in this case. AR 1–6. Plaintiff now seeks review of the Commissioner's decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (disability insurance benefits), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then
    the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
    If the impairment does not meet or equal one or more of the listed
    impairments, the analysis continues. At that point, the ALJ must evaluate
    medical and other relevant evidence to assess and determine the claimant's
    RFC. This is an assessment of work-related activities that the claimant may
    still perform on a regular and continuing basis, despite any limitations
    imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–
    (c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC,
    the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or
    her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is
    the claimant able to make an adjustment to other work that exists in
    significant numbers in the national economy? If so, then the claimant is not
    disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c),
    416.960(c). If the claimant cannot perform such work, he or she is disabled.

*Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d
at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–

41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1099, 1100; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of his application, May 13, 2019. AR 17. The ALJ found at step two that Plaintiff "has the following severe impairments: persistent depressive disorder; borderline personality disorder; and cocaine, methamphetamine, hallucinogen, alcohol, and cannabis abuse history in reported sustained remission." *Id*. The ALJ concluded at step three that none of Plaintiff's impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 202, Subpart P, Appendix 1. AR 18. The ALJ further found that Plaintiff

> [H]as the residual function capacity to perform work at any exertional level not involving climbing ladders, ropes, or scaffolds, or any exposure to hazards such as unprotected heights, dangerous moving machinery, or commercial driving; and that does not require understanding, remembering, and carrying out more than simple, routine tasks that do not involve more than infrequent adaptation to unforeseen changes to the work duties; that does not require the performance of tasks involving more than occasional superficial interaction with the general public; that does not require the performance of tandem cooperative endeavors with coworkers throughout a work day to produce a work product; and that does

> not involve more than the usual indirect supervision typically
> found in a work setting involving the performance of simple,
> routine tasks once the employee has learned the work duties, as
> opposed to close "over the shoulder" supervision.

AR 20. The ALJ found at step four that Plaintiff had no past relevant work and that

transferability of job skills was thus not an issue. AR 23. Finally, at step five, the ALJ considered

Plaintiff's age, education, work experience, and RFC, as well as the testimony from a vocation

expert. *Id.* The ALJ concluded that jobs exist in significant numbers in the national economy that

Plaintiff can perform. AR 23–23. The ALJ identified the following potential jobs: (1) Laundry

Worker II, DOT 361.684-018; (2) Lab Equipment Cleaner, DOT 381.687-022; and (3) Office

Cleaner I, DOT 323.687-014. AR 24. Based on the foregoing, the ALJ concluded that Plaintiff

had not been disabled since May 13, 2019. AR 24.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly evaluating Plaintiff's subjective

testimony in determining Plaintiff's RFC; (2) failing to evaluate or provide reasons for rejecting

the lay witness testimony of Plaintiff's parents and pastor; (3) failing to acknowledge the opinion

of three treating medical sources that Plaintiff lacks the ability to acquire and maintain

employment; (4) concluding that Plaintiff is capable of "simple, routine tasks" despite his

limitations; and (5) erroneously finding certain medical opinions persuasive. Each argument is

addressed in turn.

## A.  The ALJ Did Not Err in Evaluating Plaintiff's Subjective Testimony

### 1.  Legal Standards

There is a two-step process used in the Ninth Circuit for evaluating a claimant's

testimony about the severity and effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d

586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, "if the [plaintiff] meets this first test, and there is no evidence of malingering, 'the ALJ can reject the [plaintiff's] testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

Plaintiff submitted a Function Report in June 2019. AR 146–53. Plaintiff left blank a question asking how his conditions limit his ability to work. AR 146. Plaintiff also noted no problem with personal care (dressing, bathing, hair care, shaving, eating, or using the toilet). AR

148. Plaintiff did not answer either yes or no as to whether he needed reminders to take care of personal needs or take medication. *Id*. Plaintiff noted that he did not currently prepare meals, but explained that it was because he was currently incarcerated at a facility that prepared his meals and that he would be able to prepare his own upon release. *Id*. Plaintiff reported cleaning his living space (sweeping, mopping, dusting, and disinfecting) for ten minutes per day but said he needed encouragement to do so. AR 149. Plaintiff also noted that he did not know how to drive and was nervous about learning to drive, that he shopped "about 2–3 times a month," and that it takes him about forty-five minutes to complete a shopping trip. *Id*. Plaintiff had never had a savings account or checkbook but felt confident that he "could if the situation called for" it. AR 150. Plaintiff reported hobbies including playing guitar, drawing, skateboarding and riding bikes, sewing, watching TV, and listening to music, as well as having people over to his house "in small groups or one at a time" on "most days." *Id*.

Plaintiff also noted in his Function Report specific negative ways his conditions impacted him. He reported "shut[ting] down and becom[ing] distant when problems arise," "los[ing] interest in being social, and rarely leav[ing his] dwelling without lots of urging." AR 151. Plaintiff marked that his conditions affect his abilities regarding completing tasks, concentration, understanding, following instructions, and getting along with others. *Id*. Regarding concentration, Plaintiff reported being able to pay attention "sometimes not at all, sometimes until [he] complete[s] a task [he] ha[s] started." *Id*. While Plaintiff stated he could follow written instructions "fairly well," he also claimed to do "poorly" following spoken instructions, "not well" getting along with authority figures, "very poorly" handling stress, and "very poorly" handling changes in routines. AR 151–52.

During his April 2020 hearing, Plaintiff testified about his mental health problems. Plaintiff stated that he suffered from depression and anxiety with depressive episodes "happen[ing] randomly" but that anxiety was easier to predict. AR 38. Plaintiff reported depressive episodes two to three times per month, varying in time. AR 40. Plaintiff also testified to his issues with concentration. Plaintiff stated that he has "five or six different projects lying around [his] room" that he would start but fail to finish without reminders from other people. AR 40–41. Plaintiff testified that he would sometimes give up on a project that intrigued him but other times "sit there and just ignore everything else around [him] until [he] finished it." AR 41. Plaintiff reported being in counseling at the time but stated he was not on medication. AR 42. Regarding medications, Plaintiff testified that he had taken medications in the past but had severe negative reactions ranging from "bec[oming] extremely aggressive on Ritalin and Prozac" to becoming a "zombie" on lithium. AR 42–43. Plaintiff admitted to past drug and alcohol use but had been "clean and sober for close to 21 months" at the time of the hearing. AR 43. Plaintiff testified that his mental health problems caused him to avoid going out in public. AR 44. Plaintiff relayed that he would have "anxiety attacks" and "paranoia" while in public that caused him to abandon shopping carts in aisles and not go to shows or concerts after purchasing tickets. AR 44–45. Plaintiff testified that when he volunteered with a youth group and was asked to write down participants' names as they entered, he "was too distracted to even do that" about "75 percent of the time." AR 47. Finally, Plaintiff explained his "oppositional" tendency to rebel against "any type of person or entity that [he] view[s] as an authority figure." AR 48. Plaintiff explained that his "immediate knee-jerk reaction is to do the exact opposite of what someone has told [him] to do," but also that he had "learned to control" his impulsivity "with coping skills." *Id*. Plaintiff credited his improved impulse control as the reason he was not disciplined during

incarceration, as compared to his juvenile incarceration when he was "constantly in trouble the entire time." *Id*.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 21. But the ALJ also found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. Plaintiff objects and contends that "[t]he ALJ failed to give specific, clear and convincing reasons supported by substantial evidence for finding Plaintiff's reports" inconsistent with record evidence. ECF 16 at 11. This Court disagrees.

The ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony. The ALJ pointed to "specific facts in the record" in making his determination. *Burrell*, 775 F.3d at 1138 (internal quotation marks and citation omitted). Important to the ALJ's determination was that Plaintiff's symptom testimony was inconsistent with objective medical records. *See Batson*, 359 F.3d at 1196 ("Because the ALJ considered the claimant's testimony to be contradictory and unsupported by either the objective medical evidence or any persuasive reports of his doctors, the district court did not err in affirming the ALJ's determinations about [the claimant's] credibility."). The ALJ noted that, even during Plaintiff's period of alcohol abuse in May 2017, he was "[a]lert and [o]riented" as well as "[i]ndependent" in his activities of daily living. AR 353; *see also* AR 21. The ALJ also referenced Plaintiff's September 23, 2019 psychological consultation, during which Plaintiff "said he has occasional depressed moods." AR 494; *see also* AR 21. That same consultation noted that the depressive episodes lasted "for a couple of hours," and that, while Plaintiff had had bouts of depression lasting up to three weeks, those were "[i]n the past." AR 494. The ALJ further noted an August 2018 mental status

examination, in which the treating provider checked boxes indicating that Plaintiff was alert, had normal ease of movement, was oriented with normal affect, was cooperative, and appeared relaxed, clean, and neat. AR 462; *see also* AR 21. As the ALJ noted, the only abnormalities noted on that exam were Plaintiff's past drug and alcohol use, and Plaintiff had denied using drugs and alcohol for 21 months at the time of the hearing. *Compare* AR 462 *with* AR 43 ("I've been clean and sober for close to 21 months.").

Finally, the ALJ noted "one report of anxiousness and trouble sleeping" in 2019. AR 21 (citing AR 474). Plaintiff seizes on this line and argues that the ALJ's statement was inaccurate: the medical record notes that the Plaintiff had visited a medical provider three times for this problem. ECF 16 at 16 (citing AR 474). Indeed, Plaintiff reported muscle tension and inability to sleep on January 10, 2019, continued to report neck pain and headaches on January 19, 2019, and complained on February 25, 2019 that his trial of Naproxen had not helped. AR 473–74. Still, Plaintiff misses the point. First, it is not clear that the ALJ's finding is erroneous at all. The ALJ noted "one report" of anxiousness and sleeplessness, and Plaintiff's one-month bout with these issues are in fact contained in a single medical report. Second, and more importantly, Plaintiff glosses over the ALJ's more critical finding that the 2019 document is "otherwise silent as to complaints regarding mental health functioning." AR 21. While the ALJ notes Plaintiff's documented anxiety, she is also noting that the other manifestations of it that Plaintiff reported— inability to interact with others, for example—are not borne out in the medical records.

"[T]he ALJ's interpretation of [Plaintiff's] testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Accordingly, this Court finds no error in the ALJ's evaluation of Plaintiff's symptom testimony.

**B.  The ALJ Did not Commit Harmful Error in Evaluating Testimony of Plaintiff's Parents and Pastor**

    1.  **Legal Standards**

Lay witnesses "in a position to observe a claimant's symptoms and daily activities are competent to testify," and the ALJ must consider their testimony. *Dodrill*, 12 F.3d at 918–19 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). An ALJ may discount lay witness testimony only by providing reasons that are germane to each witness. *Id*. at 919; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).[2] The Ninth Circuit has determined that "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (alterations in original) (quoting *Buckner v. Astrue,* 646 F.3d 549, 560 (8th Cir. 2011)); *see also id.* ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [Plaintiff's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination.").

---

[2] Regulations applicable to SSI claims filed after March 27, 2017—including Plaintiff's— state that an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). The Ninth Circuit has not yet addressed whether the new regulations upend the Ninth Circuits rule requiring germane reasons for discounting lay witness testimony. *See Robert U. v. Kijakazi*, No. 3:20-cv-1817-SI, 2022 WL 326166, at *7 (D. Or. Feb. 3, 2022) (noting that the Ninth Circuit has not addressed the question and that courts in this district are split, but concluding that "the ALJ must continue to give germane reasons for discounting lay witness testimony" because the new regulations did not unambiguously remove the obligation). Here, Defendant seems to concede that the Ninth Circuit's precedent still applies. *See* ECF 17 at 16 ("However, within the Ninth Circuit lay witness evidence may be discounted by an ALJ if the ALJ 'gives reasons germane to each witness for doing so.'" (internal citation omitted)).

2. **Analysis**

Plaintiff's record contains two lay witness statements. The first is a third-party function report dated July 8, 2019 and completed by Plaintiff's mother.[3] AR 168–75. Plaintiff's mother describes Plaintiff as "[e]motionally unstable, unable to regulate emotions much of the time, depression, anxiety, easily distracted, volatile, [and] has a hard time following through with tasks." AR 168. She further noted that Plaintiff generally ate "[f]rozen foods, sandwiches, [or] packaged foods to microwave" and needed reminders to take care of personal care and grooming as well as cleaning and household chores. AR 170. Plaintiff's mother also described him as "often oppositional" and noted problems with memory, completing tasks, concentration, following instructions, and getting along with others. AR 172–73. The second is a letter dated March 16, 2020 from Plaintiff's pastor and family friend. AR 213. The pastor noted issues with "impulse control, anger management, [and] coping with stress and anxiety." He also noted that Plaintiff had "emotional outbursts [that] have resulted in breakdowns of many close relationships." *Id*. Finally, referring to the times when Plaintiff volunteered with him, the pastor noted that it was "apparent that he struggled with receiving direction, co-worker relationships and basics like dependability, scheduling, punctuality and consistency. It's not that he didn't try[;] he just had overriding emotional/psychological urgencies that seemed to take over." *Id*.

The ALJ addressed these statements in passing:

Third-party statements were submitted by Ken Harvey, the claimant's pastor, and by Beverly and John [H.], the claimant's adoptive parents. The statements relate similar information as contained in the [claimant's] function report, in addition to alleging the

---

[3] Plaintiff's mother and father also submitted a letter on behalf of their son, dated April 2, 2020. AR 214–15. Plaintiff does not cite this letter in his briefing, so this Court does not consider it. *See Smith v. Berryhill*, No. 5:18-CV-00178-MAA, 2018 WL 4998125, at *3 n.2 (C.D. Cal. Oct. 12, 2018) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)).

claimant's trouble handling emotions, his history of substance abuse, and his issues with impulse control.

AR 20–21 (citations omitted). The ALJ then noted that, along with Plaintiff's own subjective reports, "the subjective statements of his documentary witnesses are not found to be entirely consistent with the longitudinal objective medical evidence. AR 21.

The Ninth Circuit has explained that "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, and therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). However, the Ninth Circuit has also recognized that errors as to the evaluation of lay witness testimony may be harmless. *Molina*, 674 F.3d at 1114. One way that failure to give germane reasons for disregarding lay witness testimony can be harmless is when "the lay testimony described the same limitations as [the plaintiff's] own testimony, and the ALJ's reasons for rejecting [the plaintiff's] testimony apply with equal force to the lay testimony." *Id.* at 1122; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the plaintiff's] own subjective complaints, and because [his wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Here, the ALJ erred in not providing reasons germane to each lay witness whose testimony he disregarded. However, the ALJ noted explicitly that the lay testimony was similar to—and unsupported for the same reasons as—Plaintiff's subjective testimony. Indeed, the only portions of the lay witness testimony that tread different ground than the claimant's subjective complaints are those parts the note his oppositional nature and resistance to authority. But Plaintiff himself stated at the hearing that he had developed "coping mechanisms" to tamp down

his impulsivity. *See* AR 48. Moreover, the medical record evidence cited by the ALJ in

disregarding Plaintiff's subjective complaints described him as cooperative, relaxed, and with

normal affect. AR 462. Accordingly, this Court finds that the ALJ's error was harmless.

**C.  The ALJ Did Not Err in Declining to Acknowledge Opinions from Three Treating Medical Sources that Plaintiff is Not Capable of Maintaining Gainful Employment**

1. **Legal Standards**

An ALJ is only required to explain why "significant probative evidence" is rejected.

*Terry C. v. Saul*, No. 6:19-cv-00645-CL, 2021 WL 276163, at *3 (D. Or. Jan. 27, 2021) (citing

*Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

Certain evidence is "inherently neither valuable or persuasive to the issue of whether [a claimant]

is disabled . . . under the Act, [and an ALJ] will not provide any analysis about how [she]

considered such evidence in [her] determination or decision." 20 C.F.R. § 416.920b(c). This

inherently unvaluable and unpersuasive evidence includes statements that the claimant is or is

"not disabled, blind, able to work, or perform regular or continuing work" and "[s]tatements

about whether or not [the claimant has] a severe impairment(s)." *Id*. § 416.920b(c)(3)(i)–(ii). The

rationale for this rule is that these are "[s]tatements on issues reserved to the Commissioner" and

it is the Commissioner who is "responsible for making the determination or decision about

whether [the claimant is] disabled." *Id*. § 416.920b(c); *see Ryan L. F. v. Comm'r of Soc. Sec.*,

No. 6:18-cv-01958-BR, 2019 WL 6468560, at *5 (D. Or. Dec. 2, 2019) (concluding that the ALJ

did not err in declining to acknowledge a treatment note that in which a doctor stated the plaintiff

qualifies for Social Security).

2. **Analysis**

Plaintiff argues that the ALJ erred in failing to acknowledge "ten opinions from three treating medical sources, dated from 2011 to 2017, that Plaintiff lacks the capacity for gainful employment." ECF 16 at 24. This Court disagrees.

As an initial matter, this Court addresses Plaintiff's contention that "medical opinions are not irrelevant simply because they are rendered outside of the adjudicative period." *Id*. at 25. In support of this proposition, Plaintiff cites to *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Tellingly, Plaintiff does not cite any language from *Smith*, which holds that "reports containing observations made *after* the period for disability are relevant to assess the claimant's disability." *Id*. (emphasis added); *see also Robert R. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-cv-01272-MK, 2020 WL 7048270, at *4 (D. Or. Dec. 1, 2020) ("The records themselves cannot be discarded as the Ninth Circuit has long held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" (quoting *Smith*, 849 F.2d at 1225)). Quite the contrary, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Thus, any medical opinions predating the alleged onset of disability are not significantly probative and the ALJ need not explain why she rejected them. *Terry C.*, 2021 WL 276163, at *3.[4]

---

[4] Plaintiff also argues that the "fact that these opinions were rendered before the technical date on which Plaintiff alleges disability does not relieve the ALJ of the obligation to consider them" because "Plaintiff originally alleged disability as of May 14, 2001." ECF 16 at 25. But, as noted above, Plaintiff amended his alleged onset date to May 13, 2019. AR 15, 32–33, 36. Plaintiff has not cited any authority that states that the *Carmickle* rule does not apply to the amended onset date. On the other hand, multiple courts in this district have found that the amended onset date is salient for purposes of what reports are considered predating. *See Hilliker v. Berryhill*, No. 6:16-cv-008270HZ, 2017 WL 4220529, at *3 (D. Or. Sep. 21, 2017) (finding that medical records

Additionally, at least eight of the opinions that Plaintiff cites are not "medical opinions" for the purpose of Plaintiff's objection because they are unadorned conclusions that Plaintiff is unable to work. Dr. Larry Hirons, M.D. made three statements—dated May 25, 2011, October 26, 2011, and December 26, 2012—expressing variations of the sentiment that Plaintiff "has never been able to be independently supportive of himself and [Dr. Hirons] think[s] it is not very hopeful that that will occur in the future." AR 239–41; *see also* ECF 16 at 24. David J. Mikula, LCSW, made three statements[5]—dated April 30, 2013, March 31, 2014, and April 27, 2017—to the effect of "sustaining gainful employment appears beyond [Plaintiff's] functional capacity and capability." AR 219, 223, 242; *see also* ECF 16 at 24–25. Finally, Dr. Timothy Mitchell, M.D. opined on May 31, 2013 and April 18, 2014 that Plaintiff was "disabled and incapable of sustaining himself independently." AR 220, 238; *see also* ECF 16 at 24–25. These conclusory statements that Plaintiff was disabled, incapacitated, or unable to support himself were conclusions properly reserved for the Commissioner. *See* 20 C.F.R. § 416.920b(c)(3)(i)–(ii). The

---

created prior to the amended disability onset date are of limited relevance); *Moody v. Comm'r of Soc. Sec. Admin.*, No. 3:14-cv-01756-MA, 2015 WL 6948578, at *8 (D. Or. Nov. 10, 2015) ("declin[ing] to speculate on the rationale behind plaintiff's amendment" and concluding that the ALJ "properly discounted [a medical] opinion on the basis that it predated" that date). Thus, this Court concludes that the ALJ properly discounted these opinions because they predated the amended onset date.

[5] Plaintiff also cites two additional statements by Mr. Mikula. *See* AR 16 at 24. These statements—dated May 14, 2012 and May 29, 2013—note that Plaintiff had made "improvements in managing his life" but would benefit from continued therapy, that he had periodic depressive episodes and daily mood fluctuations, and that medication had proved ineffective. AR 217, 221. These are not medical opinions under 20 C.F.R. § 416.913(a)(2) because they are not "statement[s] . . . about what [the claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions." Indeed, all ten of the statements cited by Plaintiff are not primarily aimed at describing work limitation, but rather advocate for Plaintiff's continued coverage on his mother's health insurance plan as a disabled dependent. *See, e.g.*, AR 217 ("I strongly advocate for [Plaintiff] to be continued on his current insurance plan. It is essential for his health and well-being.").

ALJ was thus not required to address these statements. *Ryan L. F.*, 2019 WL 6468560, at *5.

Accordingly, the ALJ did not err.

### D. The ALJ Committed Harmful Error by Concluding Plaintiff is Capable of "Simple, Routine Tasks" Despite His Moderate Limitation in Concentration, Persistence, or Pace

#### 1. Legal Standards

When an ALJ makes a finding of moderate limitations in concentration, persistence, or pace in step three, those limitations must be reflected in the RFC assessment. *Saucedo v. Colvin*, No. 6:12-CV-02289-AC, 2014 WL 4631225, at *17–18 (D. Or. Sept. 15, 2014) (explaining that failure to include limitations regarding concentration, persistence, or pace in the RFC is reversible error if the ALJ found such limitations at step three); *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace."). An ALJ's assessment that a plaintiff can perform "simple tasks" may "adequately capture[] restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In *Stubbs-Danielson*, for example, the ALJ relied on medical testimony that the plaintiff retained the ability to perform simple tasks, notwithstanding some evidence that the plaintiff had deficiencies in pace. *Id.* at 1173-74. *Stubbs-Danielson* does not apply, however, to cases where the medical evidence establishes that the plaintiff has restrictions in concentration, persistence, or pace that are not captured in the RFC. *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) ("The medical testimony in *Stubbs-Danielson*, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted,

that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite.").

### 2. Analysis

Here, at step three, the ALJ relied on medical evidence to determine that Plaintiff has moderate limitations in concentration, persistence, or pace. AR 19. However, while the RFC limits Plaintiff to "simple, routine tasks," it does not include any limitations related to concentration, persistence, or pace. AR 20. The issue, then, is whether the RFC assessment sufficiently translates the ALJ's findings into functional limitations. This Court finds that it does not. *See Gartner v. Berryhill*, No. 6:16-cv-01505-SI, 2017 WL 3208351, *14 (D. Or. July 28, 2017) ("An RFC that limits Plaintiff to simple work does not incorporate Plaintiff's moderate difficulty with concentration, persistence, and pace."); *Becky B. v. Saul*, No. 6:19-cv-330-SI, 2020 WL 1244865, at *9 (D. Or. Mar. 16, 2020). The ALJ therefore failed to fully capture Plaintiff's limitations, because the jobs the VE identified (laundry worker, lab equipment cleaner, office cleaner), AR 23–24, 51, may still require focus and concentration despite requiring "simple, routine tasks." *See Brink*, 343 F. App'x at 212 ("The hypothetical question to the vocational expert should have included not only the limitation to 'simple, repetitive work,' but also [the plaintiff's] moderate limitations in concentration, persistence, or pace."). The ALJ's hypothetical questions repeatedly referenced "simple, routine tasks," but also erroneously noted that "[h]e can . . . maintain the concentration and persistence necessary to follow those, but not more detailed tasks." AR 50. The ALJ's hypothetical questions could have misled to VE into thinking that Plaintiff's limitation was related to the complexity of the task rather than to concentration, persistence, or pace. This was harmful error.

Plaintiff also challenges that ALJ's decision to "reframe" the limitation that Plaintiff must receive supervision delivered in a "normative fashion" to a limitation that he must receive "typical," rather than "over the shoulder," supervision. ECF 16 at 30 (quoting AR 22). The ALJ purportedly reframed this limitation because it was not made in "vocational terms." AR 22. But, as Plaintiff notes, a normative supervision limitation is appropriate for an RFC. *See*, *e.g.*, *Osier v. Comm'r of Soc. Sec. Admin.*, No. 3:16-cv-01061-MA, 2017 WL 1752952, at *2 (D. Or. May 4, 2017); *Shelley V. v. Saul*, No. 6:18-cv-01760-SB, 2020 WL 1131489, at *8 (D. Or. Mar. 9, 2020). This, again, was harmful error. Apart from the conclusory statement that "claimant's ability to have contact with supervisors" was "not specif[ied] in vocational terms," AR 23, the ALJ did not explain why "typical" is a more meaningful term than "normative" in the context of an RFC. Indeed, this Court can conceive of supervision that is "typical," insofar as it is of a type normally given in a workplace, but not "normative," because it is not based on objective, consistent criteria. This leaves this Court in the impossible position of determining whether the VE's conclusions or job recommendations would have been the same or more favorable to Plaintiff if the VE had been told he required normative supervision.

On remand, the ALJ is to formulate an appropriate RFC that includes (1) the moderate concentration, persistence, or pace limitation and (2) the limitation that Plaintiff can accept supervision delivered in a normative fashion, and shall ask the VE hypothetical questions that adequately capture Plaintiff's reformulated RFC.

### E.  The ALJ Did Not Commit Harmful Error in Finding the Opinions of Non-Examining Doctors Persuasive

#### 1.  Legal Standards

For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the

Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ considers the "supportability and "consistency" of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are. *Id*. §§ 404.1520c(c), 416.920c(c). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id*. §§ 404.1520c(b), 416.920c(b). The ALJs are not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id*. §§ 404.1520c(b)(3); 416.920c(b)(3).

### 2.  Analysis

Plaintiff challenges the ALJ's decision to accept as persuasive the assessment of Dr. James Buskirk, M.D. and Dr. Susan South, Psy.D that Plaintiff was "capable of sustaining full-time work with certain limitations." ECF 16 at 29. Plaintiff specifically challenges (1) that the ALJ did not address the supportability or consistency of the medical opinions; (2) that the medical opinions were rendered without the witness statements from the Plaintiff's parents and pastor; and (3) that Dr. Buskirk had assessed either a mild or moderate limitation in concentration, persistence, or pace that the ALJ failed to include in the RFC. *Id*. at 30–31.

Here, the ALJ addressed supportability but not consistency in finding the opinions of Dr. Buskirk and Dr. South persuasive. AR 23. Dr. Buskirk, whom the ALJ found persuasive, found that the Plaintiff had social interaction limitations but no understanding, memory, concentration, or pace limitations. AR 67. And while Dr. Buskirk found that Plaintiff had an "adaptation

limitation," he was only limited in his ability to "set realistic goals and make plans independently of others." *Id*. Dr. Buskirk found that Plaintiff was "[n]ot significantly limited" in his ability to respond appropriately to changes in the work setting or to be aware of and take precautions around normal hazards. *Id*. Dr. South did not disturb these findings on review. AR 82.

The ALJ noted the factors from the medical records on which Dr. Buskirk and Dr. South based their findings, including "good eye contact, denial of depression, significant alcohol abuse prior to incarceration and extensive substance abuse, normal speech, intact thought process and thought content, depressed affect, cooperative behavior, completion of serial sevens with only one error, history of suicide attempts, history of criminal activity, and antisocial behaviors." AR 21–22 (citing AR 56–69, 71–84). The ALJ also articulated why the various restrictions she adopted were supported by the medical evidence. The restriction from exposure to hazards was supported by Plaintiff's cognitive impairments caused by drug use. AR 22–23. The restriction from understanding, remembering, and carrying out more than simple, routine tasks was supported by his error on serial sevens, problems with impulse control, and difficulties with concentration and taking instructions. AR 23. The restriction from adaptation and unforeseen changes was supported by Plaintiff's poor insight and judgment, inability to handle stress, and reported hopelessness. *Id*. Finally, the social limitation restriction was supported by Plaintiff's trouble interacting with others, history of assaultive behavior, impaired impulse control, and poor eye contact. *Id*. The ALJ extensively cited the medical record in identifying these supporting factors. *See* AR 22 (citing AR 146–53, 413–14, 421–22, 425, 462, 492–99).

But the ALJ wholly failed to address the consistency factor. The more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the opinion. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Despite finding Dr.

Buskirk and Dr. South's opinions persuasive, the ALJ made several findings that appear to be inconsistent with their opinions. For example, the ALJ found that the medical evidence also supported a moderate concentration, persistence, or pace limitation and more robust adaptation limitations—although as described above, she then failed to include that finding in the RFC. AR 22. The ALJ also decided that Plaintiff's "extensive substance abuse and the temporary cognitive deficits caused by the use *should have prompted a restriction* from work involving" certain hazards. *Id*. Finally, the ALJ found that Plaintiff's error on serial sevens should have prompted a restriction to simple, routine tasks. *Id*. If there were other portions of the medical record consistent with Dr. Buskirk's and Dr. South's opinion, the ALJ did not explicitly delineate them and explain why the opinions remained persuasive despite the ALJ's departure from them in some key aspects. The ALJ thus erred in failing to address the consistency factor.

Still, any error in assessing the consistency of Dr. Buskirk's and Dr. South's opinions with the medical record was harmless. The ALJ assessed additional restrictions on Plaintiff beyond what Dr. Buskirk's and Dr. South's opinion recommended. In other words, the ALJ's added restrictions brought the Plaintiff closer than he otherwise would have been to a finding of disability. The ALJ explained clearly where she was departing from Dr. Buskirk's and Dr. South's opinions and what medical record evidence prompted her to do so. This Court also notes that the although the ALJ did not  express disagreement with the substance of Dr. Buskirk's and Dr. South's opinions—the ALJ found that Plaintiff indeed had limitations more significant than those noted by Dr. Buskirk and Dr. South, and developed the RFC incorporating those more significant limitations.

As to Plaintiff's contention that the ALJ should have assessed Dr. Buskirk's and Dr. South's opinions as less persuasive because they were made without seeing the lay witness

statements, this Court finds the argument unavailing. As noted above, the ALJ noted explicitly that the lay testimony was similar to—and unsupported for the same reasons as—Plaintiff's own subjective testimony. This Court thus cannot say that the ALJ should have been less persuaded by the medical opinions simply because they did not account for lay testimony that the ALJ also found unpersuasive.

Finally, as to Plaintiff's contention that the ALJ did not address Dr. Buskirk's assessment that Plaintiff has either a mild or moderate concentration, persistence, or pace limitation, this Court agrees but notes that this concern has already been addressed. The ALJ did note that Plaintiff has a moderate concentration, persistence, or pace limitation. *See* AR 19 ("With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation."). Although the ALJ erred in failing to include this limitation in the RFC, this Court has already remanded on this issue.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

The ALJ did not commit harmful error in evaluating Plaintiff's subjective symptom testimony or lay witness testimony, or in declining to acknowledge the opinions of Dr. Hirons, Mr. Mikula, or Dr. Mitchell. The ALJ did commit harmful error in failing to include in the RFC and hypothetical questions to the vocational expert (1) Plaintiff's moderate limitation in concentration, persistence, or pace and (2) the limitation that Plaintiff can accept supervision delivered in a normative fashion. While the ALJ erred in finding the opinions of Dr. Buskirk and Dr. South persuasive without addressing consistency, this error was harmless because the ALJ assessed additional restrictions which were favorable to Plaintiff. The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for the limited purposes identified in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge